# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 41265

|  |  |
|---|---|
| BIG WOOD RANCH, LLC, | Burley, November 2014 Term |
| Plaintiff-Counterdefendant-Appellant, | 2015 Opinion No. 28 |
| v. | Filed: March 2, 2015 |
| WATER USERS' ASSOCIATION OF THE BROADFORD SLOUGH AND ROCKWELL BYPASS LATERAL DITCHES, INC., | Stephen W. Kenyon, Clerk |
| Defendant-Counterclaimant-Respondent. |  |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Hon. Robert J. Elgee, District Judge.

Judgment, <u>reversed</u>. Award of attorney fees and costs, <u>reversed</u>.

Perkins Coie, LLP, Boise, attorneys for appellant. Richard C. Boardman argued.

Robertson & Slette, PLLC, Twin Falls, attorneys for respondent. Gary D. Slette argued.

_____

WALTERS, J. *pro tem*

This action stems from attempts by the Water Users' Association of the Broadford Slough and Rockwell Bypass Lateral Ditches, Inc. (Association) to collect assessments from Big Wood Ranch, LLC (BWR) for maintenance performed by the Association on the Broadford Slough (Slough) and Rockwell Bypass (Bypass), which are conduits for the delivery of surface water to property owned by BWR and some of its neighbors. The water at issue originates from the Big Wood River in Blaine County, Idaho. The Association claims it has a statutory right to collect assessments for its maintenance of this water delivery system, a contention BWR disputes. On summary judgment, the district court determined that the Association was validly formed pursuant to Idaho Code section 42-1301, and, after a bench trial, found BWR owed

1

payment for these outstanding assessments. BWR appeals, challenging the validity of the Association's formation under the statute, as well as the court's alternative contract and equity-based theories for granting judgment in favor of the Association. We reverse the judgment and the award of attorney fees and costs in favor of the Association.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The properties and water features at issue are located near Bellevue, Idaho. The Slough and Bypass serve as conduits for the delivery of surface water to properties along a stretch of the Big Wood River. The Association was formed for the stated purpose of maintaining both the Slough and the Bypass, which maintenance is funded by annual assessments charged to Association members. The assessments are apportioned based on the volume of water a particular member is legally entitled to use. The Association's Bylaws were adopted on April 16, 2002, after notice was provided to the owners of water rights along the Slough and Bypass, and its Articles of Incorporation were filed with the Idaho Secretary of State on May 3, 2002. The Articles recite that the Association was formed pursuant to Idaho Code section 42-1301. There were 17 original members of the Association. BWR was not the owner of the property at the time the Bylaws were adopted and the Articles were filed.

Marc Richards (Richards) is the sole and managing member of BWR. In 2006, BWR purchased the property at issue at 303 Broadford Road from Jann Wenner (Wenner). Wenner was one of the 17 founding members of the Association. Wenner paid the Association's invoices during his ownership, but there are no facts in the record to indicate whether Wenner informed BWR of the Association's existence. BWR purchased the 117 acre property for $5,000,000, sight unseen, and Richards admitted to never undertaking an inspection of the property or its water rights, beyond consulting with a licensed realtor and a title insurance company. Certain of the transaction documents related to purchase (*e.g.*, the warranty deed and title report) failed to identify or reference the Association, however the Purchase and Sale Agreement contained a provision expressly advising BWR to seek advice regarding any water rights acquired with the property.[1] While the Association filed its Articles with the State in May 2002 and began

---

[1] The Agreement provides:

> Water Rights verification: It is strongly advised that the Buyer contact a knowledgeable attorney of the Buyer's choice, experienced in water law, to advise the Buyer of the validity, quality, and quantity of any water right acquired with [the] real estate described in this Agreement. Buyer must verify same during the inspection period.

invoicing its members shortly thereafter, it failed to record evidence of its existence in Blaine County prior to BWR's purchase of the property in June 2006.

Because Wenner lived in New York during his ownership of the property, he authorized Robert Bouttier (Bouttier), another original Association member and neighboring land owner, to farm and irrigate the property. Specifically, Bouttier was permitted to keep and graze his horses on the land, which required Bouttier to plant and irrigate the pastures, maintain the fences, abate weeds and fallen trees, and generally monitor the property in Wenner's absence. Irrigating the pastures involved Bouttier calling the Association for delivery of Wenner's surface water, an activity Wenner ratified through his payment of the Association's invoices. Shortly after BWR's purchase from Wenner, Richards met personally with Bouttier on the property. Richards advised Bouttier to continue operating exactly as he had under Wenner. The parties seem to agree that the conversation between Richards and Bouttier did not go into great detail or specificity regarding Bouttier's activities. Regardless, after BWR's purchase, Bouttier continued grazing, irrigating, and farming exactly as he had done during Wenner's tenure, including calling for delivery of surface water by the Association.

In late 2007, the Association attempted to submit its first invoice to BWR, but admits to having difficulty locating BWR by mail. BWR contends it did not receive this invoice until late 2008/early 2009. BWR refused to pay the initial and subsequent assessments, in part, based on its understanding that it was already paying annual dues to Water District No. 37 for delivery of its surface water.

On July 29, 2010, the Association commenced a small claims action against BWR in the magistrate division of the district court seeking to collect outstanding assessments for the years 2007–2009. At the time the small claims action was filed, the outstanding balance totaled $4,950. On November 5, 2010, BWR filed a complaint in district court seeking declaratory relief regarding the rights and obligations of both parties with respect to any past and future assessments owed to the Association. On the same date, BWR filed a motion to consolidate the Association's small claims action with BWR's newly filed district court action, which was granted on November 8, 2010. On December 20, 2011, the Association filed its answer and counterclaim, wherein it sought, *inter alia*, declaratory relief regarding the legality of the Association's formation, its statutory authority to deliver surface water to Association members, and its right to collect assessments for the same. The Association sought recovery of delinquent

3

assessments from BWR in the amount of $7,550. On January 9, 2012, BWR filed an answer to the counterclaim, and on April 12, 2012, the Association filed a notice waiving all affirmative defenses asserted in its answer.

On April 23, 2012, the parties filed cross-motions for summary judgment, each accompanied by memoranda in support and numerous affidavits. On May 21, 2012, the district court held a hearing on the parties' cross-motions for summary judgment. Following oral argument, the district court ruled from the bench, granting summary judgment in favor of the Association on its counterclaim seeking a declaration that the Association was validly formed under Idaho Code section 42-1301 and denying BWR's motion for summary judgment. While determining that the Association was properly formed under the statute, the district court found disputed issues of fact remained as to whether BWR was a member of the Association, whether the Association was entitled to recover assessments from BWR beyond the statute under alternate theories of contract, quantum meruit, and unjust enrichment, and, if so, what amount was recoverable. On June 15, 2012, the district court issued a written order memorializing its May 21, 2012 rulings from the bench. Specifically, the district court found that the Association was "validly formed and is of continuing authority to act pursuant to Idaho Code [section] 42-1301, *et seq*."; that the Slough "is a canal for purposes of water right delivery pursuant to Idaho Code [section] 42-1301, *et seq*."; that "[a] legal question exists over whether [BWR] is a member [of the Association]"; and, that "the issue of the amount of assessments or charges, if any, owing to the [Association] by [BWR]" remains outstanding.

The remaining issues were addressed during a bench trial on three separate days, spanning from November 2012 to January 2013. The unusually protracted and fragmented three-day trial was caused by Richards' failure to appear on two occasions. Specifically, due to a miscommunication between BWR's counsel and Richards, Richards was in Hawaii on November 13, 2012, the original trial date set for this action. Although certain witnesses testified and evidence was submitted, the trial was continued to December 18, 2012, to afford Richards an opportunity to appear and testify. However, on December 18, 2012, Richards was again absent because he was again in Hawaii, this time due to an alleged mechanical failure impacting his flight home. BWR was ordered to pay the costs and attorney fees incurred by the Association in connection with its December appearance. The trial concluded on January 4, 2013, with Richards appearing and testifying.

4

On February 28, 2013, the district court entered written findings of fact and conclusions of law and granted judgment in favor of the Association for BWR's delinquent assessments. On motion by BWR, the district court adjusted two of its factual findings and also awarded costs and attorney fees to the Association under Idaho Code section 42-1307, but otherwise left untouched its judgment and findings in favor of the Association. Specifically, a second amended judgment was entered against BWR on June 18, 2013, wherein BWR was ordered to pay outstanding assessments (with statutory penalties and interest) in the amount of $9,500, as well as $2,209.19 in costs, and $72,875 in attorney fees. BWR timely filed a notice of appeal on July 30, 2013.

## II. ISSUES ON APPEAL

1.    Whether the district court erred in concluding that the Association was validly formed pursuant to Idaho Code section 42-1301.

2.    Whether the district court erred in concluding that BWR is obligated under alternative theories of contract, quantum meruit, and unjust enrichment for payment of delinquent assessments to the Association.

3.    Whether either party is entitled to an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3).

## III. STANDARD OF REVIEW

### A.    Summary Judgment.

On appeal from the grant of a motion for summary judgment, this Court's standard of review is the same as the standard used by the district court originally ruling on the motion. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

The burden of proving the absence of material facts is upon the moving party. The adverse party, however, "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Idaho Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial." The moving party is therefore entitled to a judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.

When an action, as here, will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. Resolution of the possible conflict between the inferences is within the responsibilities of the fact finder. This Court exercises free review over the entire record that was before the district judge to determine whether either side was entitled to judgment as a

5

matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences.

*P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007) (citations omitted).

**B.      Bench Trial.**

> Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Benninger v. Derifield*, 142 Idaho 486, 488–89, 129 P.3d 1235, 1237–38 (2006) (citing *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991)). Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered. *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999). This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous. *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006); I.R.C.P. 52(a). If the trial court based its findings on substantial evidence, even if the evidence is conflicting, this Court will not overturn those findings on appeal. *Benninger*, 142 Idaho at 489, 129 P.3d at 1238. Additionally, this Court will not substitute its view of the facts for that of the trial court. *Ransom*, 143 Idaho at 643, 152 P.3d at 4. This Court exercises free review over matters of law. *Bolger v. Lance*, 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002) (citing *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999)).

*Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009).

## IV. ANALYSIS

**A.      The Association is not qualified to operate pursuant to Idaho Code section 42-1301.**

The parties filed cross-motions for summary judgment on, *inter alia*, the issue of whether the Association was validly formed pursuant to Idaho Code section 42-1301. On May 21, 2012, the district court heard argument on the summary judgment motions and entered judgment in favor of the Association on the issue of statutory formation. Idaho Code section 42-1301 provides, in pertinent part, as follows: "Where three (3) or more parties take water from [the] same canal or reservoir at the same point to be conveyed to their respective premises for any distance through a lateral or distributing ditch or laterals or distributing ditches such parties shall constitute a water users' association." I.C. § 42-1301. Specifically, for the Association to satisfy those statutory requirements there must be (1) three or more parties, (2) who all take water from the same canal or reservoir, (3) at the same diversion point, (4) which is then conveyed via a lateral or distributing ditch (or series of laterals/distributing ditches) to the parties' respective premises.

On summary judgment, the district court found that the Association was validly formed pursuant to this statute. The following two issues were heavily litigated: (1) whether the upper portion of the Slough is properly considered a canal, as opposed to a natural watercourse, and (2) whether alternative common points of diversion exist where the Slough diverts out of the Big Wood River and also where the Bypass diverts water out of the Slough. Thus, elements two and three were expressly litigated. On appeal, BWR challenges the court's findings regarding these elements, namely that the upper portion of the Slough qualifies as a canal and that a common point of diversion exists where the Slough diverts into the Bypass. This Court will refrain from addressing these issues, however, because there is insufficient evidence in the record to establish that the remaining elements, one and four, are satisfied.

This Court exercises free review over a grant of summary judgment. *Grabicki v. City of Lewiston*, 154 Idaho 686, 690, 302 P.3d 26, 30 (2013). The Association, as the party moving for summary judgment on the issue, bore the burden of proving the absence of disputed material facts as to each statutory element. *Thomson v. City of Lewiston*, 137 Idaho 473, 476, 50 P.3d 488, 491 (2002). For the reasons outlined in greater detail below, the record contains undisputed facts demonstrating that the Association does not satisfy all the elements for formation under Idaho Code section 42-1301.

The Slough and Bypass serve as conduits for the delivery of surface water to properties along a stretch of the Big Wood River. The Slough originates from the River and runs relatively parallel to it before re-entering it at a point downstream. The Bypass is a man-made ditch fed by the Slough. The Bypass runs parallel to the Slough before emptying back into it. At summary judgment, the Slough was conceptually divided into two portions, which this Court will refer to as the "Upper Slough" and "Lower Slough." The Upper Slough is the segment running from the Slough's initial point of diversion off the Big Wood River to the point where the Bypass empties into the Slough. The Lower Slough begins where the Bypass empties into the Slough and stretches until the Slough re-joins the River.

During summary judgment proceedings before the district court, aerial photographs of the properties and water features at issue were introduced. These photographs jointly constituted a single exhibit. The aerial photographs depict the Big Wood River, the Slough, and the Bypass. In addition, they identify the precise locations where individual Association members ultimately get their water from the Bypass or Lower Slough. A review of this exhibit, the parties' discovery

responses, and arguments on appeal reveals that the Association fails to satisfy the statutory requirements for a water users' association. The Association fails to meet the requirements of the statute because the vast majority of Association members take water from the Lower Slough (which is not a ditch or lateral), and only two members take directly from the Bypass. If only two Association members take from the Bypass and the remaining members take from the Lower Slough, the Association fails to satisfy the statute's first and fourth elements, the numerosity ("three or more") requirement and the shared ditch(es)/lateral(s) requirement, respectively. Although elements two and three are not addressed in this opinion, element two requires all association members to take from the same canal or reservoir, and element three mandates that water from this shared source be diverted at a common point out of the shared canal or reservoir.

For the Association to be qualified under the statute, the Lower Slough would need to be categorized as a ditch or lateral, a determination which is unsupported by the record. In finding that the Upper Slough is a canal and has otherwise lost its character as a natural watercourse, a finding BWR challenges on appeal, the district court went to great lengths to segregate its findings between the Upper and Lower Sloughs. Specifically, the district judge stated: "I would conclude that the [S]lough has lost its character as a natural channel. I think the case law is there, it's been pointed to. The [S]lough - - and I want to clarify, and that's between - - well, the [S]lough above where the Rockwell Bypass empties into it, the [S]lough above that point has lost its character as a natural channel." More plainly, the district court was careful to limit its findings to only the Upper Slough, and made no formal determination as to the Lower Slough's character.

Even without a formal determination by the district court, the record demonstrates that the character of the Lower Slough is not in dispute, as all evidence suggests that the Lower Slough is considered a natural watercourse and not a ditch or lateral. For example, in response to a request for admission, the Association stated that "portions of the [Slough] are treated as a canal or water delivery system while portions at the lower reach thereof may be regarded as a natural channel." Furthermore, the Association conceded in its appellate brief that the Lower Slough is properly considered a natural stream by stating: "Only at a point below where the Rockwell Bypass rejoined the Broadford Slough channel was it considered to have 'original water' of its own that resulted in the IDWR characterizing that portion of the Broadford Slough channel as a natural watercourse."

Although these elements were not litigated in the same level of detail as elements two and three, BWR raised these arguments in its opposition to the Association's motion for summary judgment. Specifically, BWR argued that the Association cannot be properly qualified under the statute "given that some alleged members take from the Bypass and others take from the [Lower] Slough." BWR also stated: "According to documents prepared by the Association's expert, there are only two (2) alleged water rights that take water directly from the Bypass."

Based on this Court's review of the record, elements one and four of the statute have not been established. Element one is not satisfied because, while the Bypass is undisputedly a ditch, only two users take water directly from the Bypass, not "three or more." Element four is not satisfied because the Lower Slough is not a ditch or lateral and any users taking water from the Lower Slough cannot properly be considered members of any water users' association under Idaho Code section 42-1301. For these reasons, the Association failed to carry its burden of establishing all of the required elements, and the district court's grant of summary judgment in its favor on the issue of statutory compliance was improper. As such, the district court's grant of summary judgment in the Association's favor is reversed.

In light of these deficiencies with elements one and four, the Association is not qualified to operate as a water users' association under Idaho Code section 42-1301. Given this holding, this Court will refrain from addressing the other alleged statutory deficiencies raised on appeal, specifically regarding elements two and three and the Association's maintenance of the Slough. Resolution of these issues is not necessary to adjudicate this appeal.

Based on this reversal, the district court's award of attorney fees and costs based on Idaho Code section 42-1307 is also reversed. Idaho Code section 42-1307 permits a water users' association to collect reasonable attorney fees and costs in an action to collect outstanding assessments from its members. I.C. § 42-1307. Given that the Association does not meet the statutory requirements of a water users' association, there is no basis to award attorney fees and costs under section 42-1307. Because the district court did not rely on any alternative grounds in making this award, the award of attorney fees and costs in the Association's favor is also reversed.

**B.**     **The district court erred by alternatively granting judgment to the Association on unpled contract and equity-based theories.**

Setting aside whether the Association satisfied the requirements of Idaho Code section 42-1301, the district court alternatively found that the Association is entitled to collect

9

outstanding assessments from BWR under the common law theories of breach of contract, quantum meruit, and unjust enrichment. However, these theories were never pled by the Association. The Association's pleadings contain claims grounded solely in the water users' association statute, Idaho Code section 42-1301. These theories were raised during the bench trial when the district court, *sua sponte*, found alternative bases for recovery outside of the water users' statute. The Association, however, never moved under Idaho Rule of Civil Procedure 15(b) to amend and conform its pleadings to these theories. Furthermore, the record does not support a conclusion that the alternative contract and equity-based theories were tried by either express or implied consent and therefore cannot stand as a basis for the district court's decision. *M.K. Transp., Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980).

**C.      BWR is entitled to attorney fees and costs on appeal.**

BWR and the Association both request attorney fees pursuant to Idaho Code section 12-120(3). That section provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12-120(3). This section "compels an award of attorney fees to the prevailing party in an action to recover on a commercial transaction." *Troupis v. Summer*, 148 Idaho 77, 81, 218 P.3d 1138, 1142 (2009).

This action stems from a dispute over years of outstanding invoices allegedly due and owing to the Association by BWR for services rendered in connection with the delivery and maintenance of BWR's surface water rights. This constitutes a commercial transaction. Although this Court holds that the Association is not qualified under Idaho Code section 42-1301 to operate as a water users' association, both parties agree that the gravamen of this lawsuit is a commercial transaction. For these reasons, and because BWR is the prevailing party on appeal, BWR is entitled to attorney fees on appeal pursuant to Idaho Code section 12-120(3).

As to costs on appeal, as a matter of course, costs are awarded as to the prevailing party under Idaho Code section 12-107 and Idaho Appellate Rule 40(a). *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 501, 224 P.3d 1068, 1090 (2009). Thus, costs on appeal are also awarded to BWR.

## V. CONCLUSION

The district court's finding on summary judgment that the Association is qualified to operate pursuant to Idaho Code section 42-1301 is reversed, and the award of attorney fees and costs to the Association under Idaho Code section 42-1307 is also reversed. The district court's alternative contract and equity-based findings are not based on theories pled by the Association and therefore must also be reversed. BWR is entitled to attorney fees and costs on appeal.

Chief Justice BURDICK, Justices EISMANN and HORTON **CONCUR.**

J. JONES, Justice, specially concurring.

I concur in the Court's opinion. The Court correctly finds that the Association does not qualify as a lateral ditch water user's association pursuant to Idaho Code section 42-1301, due to the narrow qualifications established by the Legislature in that section. It may be that the Legislature intended entities such as the Association to fit within the parameters of Chapter 13, Title 42, Idaho Code (Chapter 13), but the requirements provided therein do not include the Association's factual situation.

The district court erred in finding that the Association was validly formed pursuant to Idaho Code section 42-1301. The Association was not "formed" under Chapter 13 but, rather, under Chapter 3, Title 30, Idaho Code, the Nonprofit Corporation Act. While it appears to be a validly-formed corporation, the Association does not qualify as a lateral ditch water users association under Idaho Code section 42-1301. The Association's corporate existence is not dependent upon qualification as a Chapter 13 entity. According to Article II of its Articles of Incorporation, the Association was formed to "be a non-profit corporation complying with the Idaho Non-Profit Corporation Act." Article V described the purposes and powers of this corporate entity:

> The purpose for which this corporation is formed is the transaction of any lawful activity, including, without limitation, the ownership, operation and maintenance of the Broadford Slough and Rockwell Bypass lateral ditches located in Blaine County, Idaho, into which certain waters of the Big Wood River are diverted and conveyed to the members of the corporation, and to levy and assess from its members, in the manner prescribed by law, annual assessments reasonably calculated to provide for the necessary improvement, repair, maintenance and operation of said lateral ditches, including sufficient monies to establish a contingency fund for unexpected or emergency repairs or replacements; and to purchase, lease and dispose of such real and personal property as may be necessary or expedient for the proper conduct of its business; and all other

purposes and powers granted to lateral ditch water users' associations pursuant to the provisions of Title 42, Chapter 13, Idaho Code.

Thus, the corporation is authorized to transact "any lawful activity." Conducting business pursuant to Chapter 13 is not such an activity for the Association since it does not meet the requirements of Idaho Code section 42-1301.

The Court also correctly finds that the Association put all of its eggs in the Chapter 13 basket, failing to properly allege claims for recovery under theories of contract, quantum meruit, and unjust enrichment. The district court may have granted recovery under those alternate theories because an entity in the position of the Association is generally entitled to recover for maintenance charges that benefit a water user such as BWR. However, it overlooked the necessity of pleading and proving these alternate theories.

The general concept of Idaho water law is that when an individual water user receives the benefit of ditch maintenance, which facilitates the user's enjoyment of his water right, the water user must pay a proportionate share of the cost of such maintenance. Maintenance charges are generally based upon the pro rata proportion of water that the particular user receives through the conveyance works operated by a maintenance entity. *See, e.g.* I.C. § 43-701(4) (pro rata assessment of irrigation district members); I.C. § 42-1303 (pro rata assessment of lateral ditch water users); I.C. § 42-1206 (pro rata assessment of users of a common ditch); I.C. § 42-5113 (pro rata assessment of members of groundwater management districts). Where a user of water benefits from the maintenance of a ditch or other "conduit for the purpose of irrigation," it is generally expected that there is no free ride and that such user will pay a proportionate share of the maintenance costs. Idaho Code section 42-1201 provides that every "person, company or corporation . . . controlling any . . . conduit for the purpose of irrigation shall . . . keep a flow of water therein sufficient to the requirements of such persons as are properly entitled to the use of the water therefrom." Idaho Code section 42-1202 requires the persons in control of such conduit to "maintain the same in good order and repair, ready to deliver water . . ." Idaho Code section 42-1206 provides that where "there is a common right to the use of water of a ditch without payment therefor," the watermaster may make a fair pro rata assessment of necessary repair or cleaning of the ditch. But, in order to recover under any of these provisions, or under general theories such as contract, unjust enrichment, or quantum meruit, a plaintiff must properly plead and prove the same. That did not occur here.